PER CURIAM.
The Florida Bar, as part of its annual review and with the authorization of the board of governors, petitions the Court to amend Rules Regulating The Florida Bar and to adopt new rules. We have jurisdiction. Art. V, § 2(a), Fla. Const. We have considered the proposed amendments and new rules to which there is no opposition, and we approve them.
Accordingly, the rules are amended and adopted as reflected in the appendix to this opinion. New language is indicated by underscoring; deleted language is indicated by overstriking. Committee comments are included for explanation and guidance only and are not adopted as an official part of the rules. These amendments shall take effect upon the release of this opinion.
No motion for rehearing shall be entertained.
It is so ordered.
BARKETT, C.J., and OVERTON, McDonald, shaw, grimes, kogan and HARDING, JJ., concur.
*1033 APPENDIX
CHAPTER 1. GENERAL
1-12. AMENDMENTS
RULE 1-12.1 AMENDMENT TO RULES; AUTHORITY; NOTICE; PROCEDURES; COMMENTS
(a) Authority to Amend. The board of governors of The Florida Bar shall have the authority to amend chapters 6, schedule A, thereto and the standards for the individual areas of certification; 7¡ and 9 of these Rules Regulating The Florida Bar, consistent with the notice, publication, and comments provided below. Only the Supreme Court of Florida shall have the authority to amend all other chapters of these Rules Regulating The Florida Bar.
(b) Proposed Amendments. Any member of The Florida Bar in good standing or a section or committee of The Florida Bar may request the board of governors to consider an amendment to these Rules Regulating The Florida Bar.
(c) Board Review of Proposed Amendments. The board of governors shall review proposed amendments by referral of the proposal to an appropriate committee thereof for substantive review. After substantive review, an appropriate committee of the board shall review the proposal for consistency with these rules and the policies of The Florida Bar. After completion of review a recommendation concerning the proposal shall be made to the board.
(d) Notice of Proposed Board Action. Notice of the proposed action of the board on a proposed amendment shall be given in an edition of The Florida Bar News that is published prior to the meeting of the board at which the board action is taken. The notice shall identify the rule(s) to be amended and shall state in general terms the nature of the proposed amendments.
(e) Comments by Members. Any member may request a copy of the proposed amendments and may file written comments concerning them. The comments shall be filed with the executive director sufficiently in advance of the board meeting to allow for copying and distribution to the members of the board.
(f) Approval of Amendments. Amendments to other than chapters 7 and 9 of these Rules Regulating The Florida Bar shall be by petition to the Supreme Court of Florida. Petitions to amend these Rules Regulating The Florida Bar may be filed by the board of governors or by 50 members in good standing, provided that any amendments proposed by members of the bar shall be filed 90 days after filing them with The Florida Bar.
(g) Notice of Intent to File Petition. Notice of intent to file a petition to amend these Rules Regulating The Florida Bar shall be published in The Florida Bar News at least 30 days before the filing of the petition. The notice shall set forth the text of the proposed amendments, state the date the petition will be filed, and state that any comments or objections must be filed within 30 days of filing the petition. A copy of all comments or objections shall be served on the Executive Director of The Florida Bar and any persons who may have made an appearance in the matter.
(h) Action by the Supreme Court of Florida. The court shall review all proposed amendments filed under this rule and such amendments shall not become effective until an order is issued approving them. Final action of the court shall be reported in The Florida Bar News.
(i) Waiver. On good cause shown, the court may waive any or all of the provisions of this rule.
CHAPTER 3. RULES OF DISCIPLINE
3-4. STANDARDS OF CONDUCT
RULE 3-4.8 RESPONDENT’S OBLIGATION TO RESPOND
Any member of The Florida Bar who is the subject of an investigation under the Rules Regulating The Florida Bar shall respond, in writing, to all investigative inquiries made by bar counsel or grievance committees, and as elsewhere required in the Rules Regulating The Florida Bar. The required response may invoke any *1034 proper privilege, immunity, or disability available to the member.
3-5. TYPES OF DISCIPLINE
RULE 3-5.1 GENERALLY
A judgment entered, finding a member of The Florida Bar guilty of misconduct, shall include one or more of the following disciplinary measures:
(a) Admonishments. A Supreme Court of Florida order finding minor misconduct and adjudging an admonishment may direct the respondent to appear before the Supreme Court of Florida, the board of governors, grievance committee, or the referee for administration of the admonishment. A grievance committee report and finding of minor misconduct or the board of governors, upon review of such report, may direct the respondent to appear before the board of governors or the grievance committee for administration of the admonishment. A memorandum of administration of an admonishment shall thereafter be made a part of the record of the proceeding.
(b) Minor Misconduct. Minor misconduct is the only type of misconduct for which an admonishment is an appropriate disciplinary sanction.
(1) Criteria. In the absence of unusual circumstances misconduct shall not be regarded as minor if any of the following conditions exist:
(A) the misconduct involves misappropriation of a client’s funds or property;
(B) the misconduct resulted in or is likely to result in actual prejudice (loss of money, legal rights, or valuable property rights) to a client or other person;
(C) the respondent has been publicly disciplined in the past 3 years;
(D) the misconduct involved is of the same nature as misconduct for which the - respondent has been disciplined in the past 5 years;
(E) the misconduct includes dishonesty, misrepresentation, deceit, or fraud on the part of the respondent; or
(F)the misconduct constitutes the commission of a felony under applicable law.
(2) Discretion of Grievance Committee. Despite the presence of 1 or more of the criteria described in subdivision (1) above, a grievance committee may recommend an admonishment for minor misconduct when unusual circumstances are present. When the grievance committee recommends an admonishment for minor misconduct under such circumstances, its report shall contain a detailed explanation of the circumstances giving rise to the committee’s recommendation.
(3) Recommendation of Minor Misconduct. If a grievance committee finds the respondent guilty of minor misconduct or if the respondent shall admit guilt of minor misconduct and the committee concurs, the grievance committee shall file its report recommending an admonishment, recommending the manner of administration and for the taxing of costs against the respondent. The report recommending an admonishment shall be forwarded to staff counsel and the designated reviewer for review. If staff counsel does not return the report to the grievance committee to remedy a defect therein, or if the report is not referred to the disciplinary review committee by the designated reviewer (as provided in rule 3-7.5(b)), the report shall then be served on the respondent by bar counsel. The report and finding of minor misconduct shall become final unless rejected by the respondent within 15 days after service of the report. If rejected by the respondent, the report shall be referred to bar counsel and referee for trial on complaint of minor misconduct to be prepared by bar counsel as in the case of a finding of probable cause. If the report of minor misconduct is not rejected by the respondent, notice of the finding of minor misconduct shall be given, in writing, to the complainant.
(4) Rejection of Minor Misconduct Reports. The rejection by the board of governors of a grievance committee report of minor misconduct, without dismissal of the case, or remand to the grievance committee, shall be deemed a finding of probable cause. The rejection of such report by a *1035 respondent shall be deemed a finding of probable cause for minor misconduct. Upon trial before a referee following rejection by a respondent of a report of minor misconduct, the referee may recommend any discipline authorized under these rules.
(5) Admission of Minor Misconduct. Within 15 days after a finding of probable cause by a grievance committee, a respondent may tender a written admission of minor misconduct to bar counsel or the grievance committee. An admission of minor misconduct may be conditioned upon acceptance by the grievance committee, but the respondent may not condition the admission of minor misconduct upon the method of administration of the admonishment or upon nonpayment of costs incurred in the proceedings. Such an admission may be tendered after a finding of probable cause (but before the filing of a complaint) only if such an admission has not been previously tendered. If the admission is tendered after a finding of probable cause, the grievance committee may consider such admission without further eviden-tiary hearing and may either reject the admission, thereby affirming its prior action, or accept the admission and issue its report of minor misconduct. If a respondent’s admission is accepted by the grievance committee, the respondent may not thereafter reject a report of the committee recommending an admonishment for minor misconduct. If the admission of minor misconduct is rejected, such admission shall not be considered or used against the respondent in subsequent proceedings.
(c) Probation. The respondent may be placed on probation for a stated period of time of not less than 6 months nor more than 3 years or for an indefinite period determined by conditions stated in the order. The judgment shall state the conditions of the probation, which may include but are not limited to the following: supervision of all or part of the respondent’s work by a member of The Florida Bar; the making of reports to a designated agency; the satisfactory completion of a course of study or a paper on legal ethics approved by the Supreme Court of Florida; such supervision over fees and trust accounts as the court may direct. The respondent will also reimburse the bar for the costs of supervision. Failure to observe the conditions of the probation or a finding of probable cause as to conduct of the respondent committed during the period of probation shall terminate the probation. In such event, even though such finding of probable cause shall be made after the expiration of the period of probation, the judgment shall be reconsidered and an appropriate judgment shall be entered. On termination of probation for failure to observe the conditions of probation or on a finding of probable cause for misconduct committed during the period of probation, the attorney may be punished for contempt or suspended from the practice of law on petition by The Florida Bar, and any such suspension shall continue until the respondent may be reinstated to the practice of law as provided elsewhere in these rules.
(d) Public Reprimand. A public reprimand shall be administered in the manner prescribed in the judgment but all such reprimands shall be reported in the Southern Reporter. Due notice shall be given to the respondent of any proceeding set to administer the reprimand. The respondent shall appear personally before the Supreme Court of Florida, the board of governors, any judge designated to administer the reprimand, or the referee, if required, and such appearance shall be made a part of the record of the proceeding.
(e) Suspension. The respondent may be suspended from the practice of law for a definite period of time or an indefinite period thereafter to be determined by the conditions imposed by the judgment. During such suspension the respondent shall continue to be a member of The Florida Bar but without the privilege of practicing, and, upon the expiration of the suspension period and the satisfaction of all conditions accompanying the suspension, the respondent shall become eligible to all of the privileges of members in The Florida. Bar. A suspension of 90 days or less shall not require proof of rehabilitation or passage of the Florida bar examination. A suspen *1036 sion of more than 90 days shall require proof of rehabilitation and may require passage of all or part of the Florida bar examination: No suspension shall be ordered for a specific period of time in excess of 3 years.
(f) Disbarment. A judgment of disbarment terminates the respondent’s status as a member of the bar. A former member who has been disbarred may only be admitted again upon full compliance with the rules and regulations governing admission to the bar. Except as might be otherwise provided in these rules, no application for admission may be tendered within 5 years after the date of disbarment or such longer period as the court might determine in the disbarment order.
(g) Notice to Clients. Upon service on the respondent of an order of disbarment, suspension, resignation for cause, emergency suspension, or placement on the inactive list, the respondent shall, unless this requirement is waived or modified in the court’s order, forthwith furnish a copy of the order to all of the respondent’s clients with matters pending in the respondent’s practice, and within 30 days after service of the order the respondent shall furnish staff counsel of The Florida Bar with a sworn affidavit listing the names and addresses of all clients who have been furnished copies of the order.
(h) Forfeiture of Fees. An order of the Supreme Court of Florida or a report of minor misconduct adjudicating a respondent guilty of entering into, charging, or collecting a fee prohibited by the Rules Regulating The Florida Bar may order the respondent to forfeit the fee or any part thereof. In the case of a clearly excessive fee, the excessive amount of the fee may be ordered returned to the client, and a fee otherwise prohibited by the Rules Regulating The Florida Bar may be ordered forfeited to The Florida Bar Clients’ Security Fund and disbursed in accordance with its rules and regulations.
(i) Restitution. In addition to any of the foregoing disciplinary sanctions and any disciplinary sanctions authorized elsewhere in these rules, the respondent may be ordered or agree to pay restitution to a complainant or other person if the disciplinary order finds that the respondent has received a clearly excessive, illegal, or prohibited fee or that the respondent has converted trust funds or property. In such instances the amount of restitution shall be specifically set forth in the disciplinary order or agreement and shall not exceed the amount by which a fee is clearly excessive, in the case of a prohibited or illegal fee shall not exceed the amount of such fee, or in the case of conversion shall not exceed the amount of the conversion established in disciplinary proceedings. The disciplinary order or agreement shall also state to whom restitution shall be made and the date by which it shall be completed. Failure to comply with the order or agreement shall not preclude further proceedings under these rules.
(j)Disciplinary Resignation. A respondent may be allowed to resign membership in The Florida Bar in lieu of defending against allegations of disciplinary violations. If accepted by the Supreme Court of Florida, a disciplinary resignation terminates the respondent’s status as a member of the bar. A former member whose disciplinary resignation has been accepted may only be admitted again upon full compliance with the rules and regulations governing admission to the bar. Except as otherwise provided in these rules, no application for admission may be tendered within 3 years after the date of the order of the Supreme Court of Florida that accepted the disciplinary resignation or such additional time as the respondent may have stated in the petition for disciplinary resignation. A petition that states that disciplinary resignation is without leave to apply for readmission shall preclude readmission to the bar.
3.7 PROCEDURES
RULE 3-7.6 PROCEDURES BEFORE A REFEREE
(a) Referees. The chief justice shall have the power to appoint referees to try disciplinary cases and to delegate to a chief judge of a judicial circuit the power to *1037 appoint referees for duty in the chief judge’s circuit. Such appointees shall ordinarily be active county or circuit judges, but the chief justice may appoint retired judges.
(b) Trial by Referee. When a finding has been made by a grievance committee or by the board that there is cause to believe that a member of The Florida Bar is guilty of misconduct justifying disciplinary action, and the formal complaint based on such finding of probable cause has been assigned by the chief justice for trial before a referee, the proceeding thereafter shall be an adversary proceeding that shall be conducted as hereinafter set forth.
(c) Venue. The trial shall be held in the county in which an alleged offense occurred or in the county where the respondent resides or practices law or last practiced law in Florida, whichever shall be designated by the Supreme Court of Florida; provided, however, that if the respondent is not a resident of Florida and if the alleged offense is not committed in Florida, the trial shall be held in a county designated by the chief justice.
(d) Style of Proceedings. All proceedings instituted by The Florida Bar shall be styled “The Florida Bar, Complainant, v. (name of respondent), Respondent,” and “In The Supreme Court of Florida (Before a Referee).”
(e) Nature of Proceedings.
(1) Administrative in Character. A disciplinary proceeding is neither civil nor criminal but is a quasi-judicial administrative proceeding. The Florida Rules of Civil Procedure apply except as otherwise provided in this rule.
(2) Discovery. Discovery shall be available to the parties in accordance with the Florida Rules of Civil Procedure.
(f) Bar Counsel. Bar counsel shall make such investigation as is necessary and shall prepare and prosecute with utmost diligence any case assigned. Assistant bar counsel shall serve under the general supervision of bar counsel.
(g) Pleadings. Pleadings may be informal and shall comply with the following requirements:
(1) Complaint; Consolidation and Severance.
(A) Filing. Staff counsel shall prepare the complaint and file the same in the Supreme Court of Florida.
(B) Content. The complaint shall set forth the particular act or acts of conduct for which the attorney is sought to be disciplined.
(C) Joinder of Charges and Respondents; Severance. A complaint may embrace any number of charges against one or more respondents, and charges may be against any one or any number of respondents; but a severance may be granted by the referee when the ends of justice require it.
(2) Answer and Motion. The respondent may shall answer the complaint and, as a part thereof or by separate motion, may challenge only the sufficiency of the complaint and the jurisdiction of the forum. All other defenses shall be incorporated in the respondent’s answer. The answer may invoke any proper privilege, immunity, or disability available to the respondent. All pleadings of the respondent must be filed within 20 days of service of a copy of the complaint.
(3) Reply. If the respondent’s answer shall contain any new matter or affirmative defense, a reply thereto may be filed within 10 days of the date of service of a copy upon bar counsel, but failure to file such a reply shall not prejudice The Florida Bar. All affirmative allegations in the respondent’s answer shall be considered as denied by The Florida Bar.
(4) Disposition of Motions. Hearings upon motions may be deferred until the final hearing, and, whenever heard, rulings thereon may be reserved until termination of the final hearing.
(5) Filing and Service of Pleadings.
(A) Prior to Appointment of Referee. Any pleadings filed in a case prior to appointment of a referee shall be filed with *1038 the Supreme Court of Florida and shall bear a certificate of service showing parties upon whom service of copies has been made. On appointment of referee, the Supreme Court of Florida shall notify the parties of such appointment and forward all pleadings filed with the court to the referee for action.
(B)After Appointment of Referee. All pleadings, motions, notices, and orders filed after appointment of a referee shall be filed with the referee and shall bear a certificate of service showing service of a copy on the staff counsel of The Florida Bar and on all interested parties to the proceedings.
(6) Amendment. Pleadings may be amended by order of the referee, and a reasonable time shall be given within which to respond thereto.
(7) Expediting the Trial. If it shall be made to appear that the date of final hearing should be expedited in the public interest, the referee may, in the referee’s discretion, shorten the time for filing pleadings and the notice requirements as provided in this rule.
(8) Disqualification of Referee. Upon motion of either party, a referee may be disqualified from service in the same manner and to the same extent that a trial judge may be disqualified under existing law from acting in a judicial capacity. In the event of disqualification, the chief justice shall appoint a successor.
(h) Notice of Final Hearing. The cause may be set down for trial by either party or the referee upon not less than 10 day’s notice. The trial shall be held as soon as possible following the expiration of 10 days from the filing of the respondent’s answer, or if no answer is filed, then from the date when such answer is due.
(i) The Respondent. Unless the respondent claims a privilege or right properly available under applicable federal or state law, the respondent may be called as a witness by The Florida Bar to make specific and complete disclosure of all matters material to the issues. When the respondent is subpoenaed to appear and give testimony or to produce books, papers, or documents and refuses to answer or to produce such books, papers, or documents, or, having been duly sworn to testify, refuses to answer any proper question, the respondent may be cited for contempt of the court.
(j) Complaining Witness. The complaining witness shall have no rights other than those of any other witness; the complaining witness has no right to be present during a hearing or trial but may be called upon to testify and produce evidence as any other witness. Neither unwillingness nor neglect of the complaining witness to cooperate, nor settlement, compromise, or restitution will excuse failure to complete any trial.
(k) Referee’s Report.
(l) Contents of Report. Within 30 days after the conclusion of a trial before a referee or 10 days after the referee receives the transcripts of all hearings, whichever is later, or within such extended period of time as may be allowed by the chief justice for good cause shown, the referee shall make a report and enter it as part of the record, but failure to enter the report in the time prescribed shall not deprive the referee of jurisdiction. The referee’s report shall include:
(A) a finding of fact as to each item of misconduct of which the respondent is charged, which findings of fact shall enjoy the same presumption of correctness as the judgment of the trier of fact in a civil proceeding;
(B) recommendations as to whether the respondent should be found guilty of misconduct justifying disciplinary measures;
(C) recommendations as to the disciplinary measures to be applied;
(D) a statement of any past disciplinary measures as to the respondent that are on record with the executive director of The Florida Bar or that otherwise become known to the referee through evidence properly admitted by the referee during the course of the proceedings (after a finding of guilt, all evidence of prior disciplin *1039 ary measures may be offered by bar counsel subject to appropriate objection or explanation by respondent); and
(E) a statement of costs incurred by The Florida Bar and recommendations as to the manner in which such costs should be taxed. The costs of the proceedings shall include investigative costs, including travel and out-of-pocket expenses, court reporters’ fees, copy costs, witness and traveling expenses, and reasonable traveling and out-of-pocket expenses of the referee and bar counsel, if any. Costs shall also include a $500 charge for administrative costs. Costs taxed shall be payable to The Florida Bar.
(2) Filing. The referee’s report and record of proceedings shall in all cases be transmitted together to the Supreme Court of Florida. Copies of the report shall be served on the parties including the staff counsel of The Florida Bar. The referee shall serve a copy of the record on staff counsel with the report. Staff counsel will make a copy of the record, as furnished, available to other parties on request and payment of the actual costs of reproduction.
(/) The Record.
(1) Reporting of Testimony. All hearings at which testimony is presented shall be reported and the transcript of the testimony shall be filed in the cause.
(2) Contents. The record shall include all items properly filed in the cause including pleadings, transcript of testimony, exhibits in evidence, and the report of the referee.
(m)Plea of Guilty by Respondent. At any time during the progress of disciplinary proceedings, a respondent may tender a plea of guilty.
(1) Before Filing of Complaint. If the plea is tendered before filing of a complaint by staff counsel, such plea shall be tendered in writing to the grievance committee.
(2) After Filing of Complaint. If the complaint has been filed against the respondent, the respondent may enter a plea of guilty thereto by filing the same in writing with the referee to whom the cause has been assigned for trial. Such referee shall take such testimony thereto as may be advised, following which the referee will enter a report as otherwise provided.
(3) Unconditional. An unconditional plea of guilty shall not preclude review as to disciplinary measures imposed.
(4) Procedure. Except as herein provided, all procedure in relation to disposition of the cause on pleas of guilty shall be as elsewhere provided in these rules.
(n)Cost of Review or Reproduction.
(1) The actual cost of reproduction, when photocopying or other reproduction is performed by the bar, for the purposes of' these rules is determined by the board to be $1 per page. In addition to reproduction charges, the bar may charge a reasonable fee incident to a request to review disciplinary records or for research into the records of disciplinary proceedings and identification of documents to be reproduced.
(2) When the bar is requested to reproduce documents that are voluminous or is requested to produce transcripts in the possession of the bar, the bar may decline to reproduce the documents in the offices of the bar and shall inform the requesting person of the following options:
(A) purchase of the transcripts from the court reporter service that produced them;
(B) purchase of the documents from the third party from whom the bar received them; or
(C) designation of a commercial photocopy service to whom the bar shall deliver the original documents to be copied, at the requesting party’s expense, provided the photocopy service agrees to preserve and return the original documents and not to release them to any person without the bar’s consent.
RULE 3-7.10 REINSTATEMENT AND READMISSION PROCEDURES
(a) Readmission. A former member who has been disbarred or whose petition for disciplinary resignation has been permitted to resign.pending-disciplinary pro *1040 ceedings accepted, pursuant to rule 3-7.12, may be admitted again only upon full compliance with the rules and regulations governing admission to the bar. Except as might be otherwise provided in these rules, no application for admission may be tendered within 5 years after the date of disbarment or such longer period as the court might determine in the disbarment order.
(b) Reinstatement. An attorney who has been suspended may be reinstated to membership in The Florida Bar pursuant to this rule. The proceedings under this rule are not applicable to suspension for nonpayment of dues.
(c) Petitions; Form and Contents.
(1) Filing. The original petition for reinstatement and 3 copies thereof shall be in writing, verified by the petitioner, and addressed to and filed with the Supreme Court of Florida. A copy shall be served on The Florida Bar in Tallahassee.
(2) Form and Exhibits. The petition shall be in such form and shall be accompanied by such exhibits as provided for in rule 3-7.10(n)(l) and (2). The information required concerning the petitioner may include any or all of the following matters in addition to such other matters as may be reasonably required to determine the fitness of the petitioner to resume the practice of law: criminal and civil judgments, disciplinary judgments, copies of income tax returns together with consents to secure original returns, occupation during suspension and information in connection therewith, financial statements, and statement of restitution of funds that were the subject matter of disciplinary proceedings.
(d) Deposit for Cost. The petition shall be accompanied by proof of a deposit paid to The Florida Bar in such amount as the board of governors shall prescribe to ensure payment of reasonable costs of the proceedings. Such costs in the discretion of the board of governors may include court reporters’ fees, witness fees and traveling expenses, and reasonable traveling expenses and out-of-pocket costs of the referee and attorneys for The Florida Bar.
(e) Reference of Petition For Hearing. The chief justice shall refer the petition for reinstatement to a referee for hearing; provided, however, that no such reference shall be made until evidence is submitted showing that all costs assessed against the petitioner in all disciplinary proceedings have been paid and restitution has been made.
(f) Attorney for the Bar. When a petition for reinstatement is filed, the board of governors or staff counsel, if authorized by the board of governors, may appoint, from the members in good standing of The Florida Bar designated by the staff counsel to serve as bar counsel, one or more attorneys to represent The Florida Bar in the proceeding. The duties of such attorneys shall be to appear at the hearings and to prepare and present to the referee evidence that, in the opinion of the referee or such attorneys, should be considered in passing upon the petition.
(g) Determination of Fitness by Referee Hearing. The referee to whom the petition for reinstatement is referred shall conduct the hearing as a trial, in the same manner, to the extent practical, as proceedings are conducted under the rule concerning trials. The matter to decide shall be the fitness of the petitioner to resume the practice of law.
(h) Hearing; Notice; Evidence.
(1) Notice. The referee to whom the petition for reinstatement is referred shall fix a time and place for hearing, and notice thereof shall be given at least 10 days prior to the hearing to the petitioner, to attorneys representing The Florida Bar, and to such other persons as may be designated by the referee to whom the petition is referred.
(2) Appearance. Any persons to whom notice is given, any other interested persons, or any local bar association may appear before the referee in support of or in opposition to the petition at any time or times fixed for hearings thereon.
(3) Failure of Petitioner to be Examined. For the failure of the petitioner to submit to examination as a witness pursu *1041 ant to notice given, the referee shall dismiss the petition for reinstatement unless good cause is shown for such failure.
(i) Prompt Hearing; Report. The referee to whom a petition for reinstatement has been referred by the chief justice shall proceed to a prompt hearing, at the conclusion of which the referee shall make and file with the Supreme Court of Florida a report that shall include the findings of fact and a recommendation as to whether the petitioner is qualified to resume the practice of law. Such report shall be in the form prescribed by the board. The referee shall file the report and record in the Supreme Court of Florida and shall serve a copy of the report and record on staff counsel and a copy of the report only on all other parties. Staff counsel shall make a copy of the record, as furnished, available to other parties upon request and payment of actual costs of reproduction.
(j) Review. Review of referee reports in reinstatement proceedings shall be in accordance with rule 3-7.7.
(k) Judgment. If the petitioner is found unfit to resume the practice of law, the petition shall be dismissed. If the petitioner is found fit to resume the practice of law, the judgment shall reinstate the petitioner in The Florida Bar; provided, however, that the judgment may make such reinstatement conditional upon the payment of all or part of the costs of the proceeding and upon the making of partial or complete restitution to parties harmed by the petitioner’s misconduct that led to the petitioner’s suspension of membership in The Florida Bar; and further provided, however, if suspension of the petitioner has continued for more than 3 years, the reinstatement may be conditioned upon the furnishing of such proof of competency as may be required by the judgment in the discretion of the Supreme Court of Florida, which proof may include certification by the Florida Board of Bar Examiners of the successful completion of an examination for admission to The Florida Bar subsequent to the date of the suspension.
(l) Successive Petitions. No petition for reinstatement shall be filed within 1 year following an adverse judgment upon a petition for reinstatement filed by or on behalf of the same person.
(m) Readmission After Disciplinary Resignation. In the case of a disciplinary resignation submitted in connection with a disciplinary action, no readmission application may be filed until 3 years after the date of the order of the Supreme Court of Florida that accepted such disciplinary resignation or such additional time as the attorney may have stated in a petition to resign for disciplinary resignation, and-not No application for readmission may be filed until all costs in disciplinary cases that were dismissed because of the disciplinary resignation have been paid by the applicant for readmission. If an attorney’s petition to -resign for disciplinary resignation states that it is without leave to apply for readmission permanently, such condition shall preclude any readmission.
(n) Petitions for Reinstatement to Membership in Good Standing.
(1) Availability. Petitions for reinstatement under this rule are available to suspended members of the bar when the disciplinary judgment conditions their reinstatement upon a showing of compliance with specified conditions.
(2) Style of Petition. Petitions shall be styled in the Supreme Court of Florida and filed with the Supreme Court of Florida in quadruplicate, with a copy served on staff counsel and The Florida Bar in Tallahassee.
(3) Contents of Petition. The petition shall be verified by the petitioner and shall be accompanied by a written authorization to the District Director of the Internal Revenue Service, authorizing the furnishing of certified copies of the petitioner’s tax returns for the past 5 years or since admission to the bar, whichever is greater. The authorization shall be furnished on a separate sheet. The petition shall have attached as an exhibit a true copy of all disciplinary judgments previously entered against the petitioner. It shall also include the petitioner’s statement concerning the following:
*1042 (A) name, age, residence, address, and number and relation of dependents of the petitioner;
(B) the offense or misconduct upon which the suspension was based, together with the date of such suspension;
(C) the names and addresses of all complaining witnesses in any disciplinary proceedings that resulted in suspension; and the name and address of the referee or judge who heard such disciplinary proceedings or of the trial judge, complaining witnesses, and prosecuting attorney, if suspension was based upon conviction of a felony or misdemeanor involving moral turpitude;
(D) the nature of the petitioner’s occupation in detail since suspension, with names and addresses of all partners, associates in business, and employers, if any, and dates and duration of all such relations and employments;
(E) a statement showing the approximate monthly earnings and other income of the petitioner and the sources from which all such earnings and income were derived during said period;
(F) a statement showing all residences maintained during said period, with names and addresses of landlords, if any;
(G) a statement showing all financial obligations of the petitioner including but not limited to amounts claimed, unpaid, or owing to the Florida Bar Clients’ Security Fund or former clients at the date of filing of the petition, together with the names and addresses of all creditors;
(H) a statement of restitution made for any and all obligations to all former clients and the Florida Bar Clients’ Security Fund and the source and amount of funds used for this purpose;
(I) a statement showing dates, general nature, and ultimate disposition of every matter involving the arrest or prosecution of the petitioner during said period for any crime, whether felony or misdemeanor, together with the names and addresses of complaining witnesses, prosecuting attorneys, and trial judges;
(J) a statement as to whether any applications were made during said period for a license requiring proof of good character for its procurement; and, as to each such application, the date and the name and address of the authority to whom it was addressed and the disposition thereof;
(K) a statement of any procedure or inquiry, during said period, covering the petitioner’s standing as a member of any profession or organization, or holder of any license or office, that involved the censure, removal, suspension, revocation of license, or discipline of the petitioner; and, as to each, the dates, facts, and the disposition thereof and the name and address of the authority in possession of the record thereof;
(L) a statement as to whether any charges of fraud were made or claimed against the petitioner during said period, whether formal or informal, together with the dates and names and addresses of persons making such charges;
(M) a concise statement of facts claimed to justify reinstatement to The Florida Bar;
(N) a statement showing the dates, general nature, and final disposition of every civil action wherein the petitioner was either a party plaintiff or defendant, together with dates of filing of complaints, titles of courts and causes, and the names and addresses of all parties and of the trial judge or judges, and names and addresses of all witnesses who testified in said action or actions; and
(O) a. statement showing what amounts, if any, of the costs assessed against the accused attorney in the prior disciplinary proceedings against the petitioner have been paid by the petitioner and the source and amount of funds used for this purpose.
(4) Comments on Petition. Upon the appointment of a referee and bar counsel, copies of the petition shall be furnished by the executive director to local board members, local grievance committees, and to such other persons as are mentioned in this rule. Persons will be asked to direct their comments to bar counsel. The proceedings and finding of the referee shall relate to *1043 those matters described in this rule and also to those matters tending to show the petitioner’s rehabilitation, present fitness to resume the practice of law, and the effect of such proposed reinstatement upon the administration of justice and purity of the courts and confidence of the public in the profession.
(5) Costs Deposit. The petition shall be accompanied by a deposit for costs of $500.
RULE 3-7.12 DISCIPLINARY RESIGNATION FROM THE FLORIDA BAR
If a disciplinary agency is investigating the conduct of an attorney, or if such an agency has recommended probable cause, then disciplinary proceedings shall be deemed to be pending and the a petition for disciplinary resignation shall may be made filed pursuant to this rule. An attorney may resign seek disciplinary resignation from The Florida Bar during the progress of disciplinary proceedings in the following manner:
(a) Petition for Leave to Resign Disciplinary Resignation. The petition for leave — to resign disciplinary resignation shall be styled “The Florida Bar v. (respondent’s name),” titled “Petition for Disciplinary Resignation,” shall be filed with the Supreme Court of Florida and shall contain a statement of all past and pending disciplinary actions and criminal proceedings against the petitioner. Such statement shall describe the charges made or those under investigation for professional misconduct, results of past proceedings, and the status of pending investigations and proceedings. The petition shall state whether it is with or without leave to reapply for readmission to the bar. A copy of the petition shall be served upon the executive director of The Florida Bar.
(b) Judgment. Within 60 days after filing and service of the petition, the Florida Bar may file with the Supreme Court of Florida its response to the petition either supporting or opposing the petition for leave-to-resign disciplinary resignation. A copy of the response shall be served upon the petitioner. The Supreme Court of Florida shall consider the petition, any response thereto, and the charges against the petitioner. If it has been shown by the petitioner in a proper and competent manner that the public interest will not be adversely affected by the granting of the petition and that such will sot neither adversely affect the purity integrity of the courts nor hinder the administration of justice nor the confidence of the public in the legal profession, the Supreme Court of Florida shall enter an appropriate judgment granting leave to resign disciplinary resignation; otherwise, the petition shall be denied. If the judgment grants to-t-he-petitioaer — leave to resign the disciplinary resignation, the judgment may require that the disciplinary resignation be subject to appropriate conditions.
(c) Delay of Disciplinary Proceedings. The filing of a petition for leave to resign pending-disciplinary proceedings disciplinary resignation shall not stay the progress of the disciplinary proceedings without the approval of the board or, if a referee has been appointed and evidence has been taken, then without the approval of the referee.
(d) Dismissal of Pending Disciplinary Cases. If disciplinary resignation is accepted under this rule, such disciplinary resignation shall serve to dismiss all pending disciplinary cases. The resigned-attorney may be readmitted as a member of The Florida -Bar — in-geod standing pursuant to rule 3-7.10(a) and (m) and-upon full compliance with any- conditions required-by-the judgment that granted the leave to resign, A rejection of such application may be reviewed by petition to the supreme courk
CHAPTER 4. RULES OF PROFESSIONAL CONDUCT
4-7. INFORMATION ABOUT LEGAL SERVICES
RULE 4-7.2 ADVERTISING
(a) Permissible Forms of Advertising. Subject to all the requirements set forth in this subchapter 4-7, including the filing requirements of rule 4-7.5, a lawyer may advertise services through public media, *1044 such as a telephone directory, legal directory, newspaper or other periodical, billboards and other signs, radio, television, and recorded messages the public may access by dialing a telephone number, or through written communication not involving solicitation as defined in rule 4-7.4. These rules shall not apply to any advertisement broadcast or disseminated in another jurisdiction in which the advertising lawyer is admitted if such advertisement complies with the rules governing lawyer advertising in that jurisdiction and is not intended for broadcast or dissemination within the State of Florida.
(b) Single Voice Requirement; Employee of Lawyer or Law Firm. Advertisements on the electronic media such as television and radio may contain the same factual information and illustrations as permitted in advertisements in the print media, but the information shall be articulated by a single voice, with no background sound other than instrumental music. The voice may be that of a full-time employee of the firm whose services are advertised; it shall not be that of a celebrity whose voice is recognizable to the public. The lawyer or full-time employee of the firm whose services are being advertised may appear on screen or on radio.
(c) Name of Lawyer or Lawyer Referral Service. All advertisements and written communications pursuant to these rules shall include the name of at least 1 lawyer or the lawyer referral service responsible for their content.
(d) Disclosure Statement. Except as provided in this subdivision, all advertisements, other than lawyer referral service advertisements shall contain the following disclosure: “The hiring of a lawyer is an important decision that should not be based solely upon advertisements. Before you decide, ask us to send you free written information about our qualifications and experience.” Lawyer referral service advertisements shall contain the following disclosure: “The hiring of a lawyer is an important decision. Before you decide to hire the lawyer to whom you are referred, ask that lawyer for written information about that lawyer’s qualifications and experience.” Thfeese disclosures need not appear in electronic advertisements or advertisements in the public print media that contain no illustrations and no information other than that listed in subdivision (n)(l)~ (810) of this rule.
(e) Dramatizations Prohibited. There shall be no dramatization in any advertisement in any medium.
(f) Use of Illustrations. Illustrations used in advertisements shall present information that can be factually substantiated and is not merely self-laudatory.
(g) Fields of Practice. Every advertisement and written communication that indicates 1 or more areas of law in which the lawyer or law firm practices shall conform to the requirements of rule 4-7.6
(h) Disclosure of Liability For Expenses Other Than Fees. Every advertisement and written communication that contains information about the lawyer’s fee, including those that indicate no fee will be charged in the absence of a recovery, shall disclose whether the client will be liable for any expenses in addition to the fee. Additionally, advertisements and written communications indicating that the charging of a fee is contingent on outcome or that the fee will be a percentage of the recovery shall disclose (1) that the client will be liable for expenses regardless of outcome, if the lawyer so intends to hold the client liable; and (2) whether the percentage fee will be computed before expenses are deducted from the recovery, if the lawyer intends to compute the percentage fee before deducting the expenses.
(i) Period for Which Advertised Fee Must be Honored. A lawyer who advertises a specific fee or range of fees for a particular service shall honor the advertised fee or range of fees for at least 90 days unless the advertisement specifies a shorter period; provided that, for advertisements in the yellow pages of telephone directories or other media not published more frequently than annually, the advertised fee or range of fees shall be honored *1045 for no less than 1 year following publication.
(j) Self-laudatory Statements. A lawyer shall not make statements that are merely self-laudatory or statements describing or characterizing the quality of the lawyer’s services in advertisements and written communications; provided that this provision shall not apply to information furnished to a prospective client at that person’s request or to information supplied to existing clients.
(k) Firm Name. A lawyer shall not advertise services under a name that violates the provisions of rule 4-7.7.
(/) Location of Practice. All advertisements and written communications provided for under these rules shall disclose the geographic location, by city or town, of the office in which the lawyer or lawyers who will actually perform the services advertised principally practice law. If the office location is outside a city or town, the county in which the office is located must be disclosed. A lawyer referral service shall disclose the geographic area in which the lawyer practices when a referral is made.
(m) Payment by Nonadvertising Lawyer. No lawyer shall, directly or indirectly, pay all or a part of the cost of an advertisement by a lawyer not in the same firm unless the advertisement discloses the name and address of the nonadvertising lawyer, the relationship between the advertising lawyer and the nonadvertising lawyer, and whether the advertising lawyer may refer any case received through the advertisement to the nonadvertising lawyer.
(n) Permissible Content of Advertisements. The following information in advertisements and written communications shall be presumed not to violate the provisions of rule 4-7.1:
(l) subject to the requirements of this rule and rule 4-7.7, the name of the lawyer or law firm, a listing of lawyers associated with the firm, office addresses and telephone numbers, office and telephone service hours, and a designation such as “attorney” or “law firm”;
(2) date of admission to The Florida Bar and any other bars and a listing of federal courts and jurisdictions other than Florida where the lawyer is licensed to practice;
(3) technical and professional licenses granted by the state or other recognized licensing authorities and educational degrees received, including dates and institutions;
(4) foreign language ability;
(5) fields of law in which the lawyer practices, subject to the requirements of rule 4-7.6;
(6) prepaid or group legal service plans in which the lawyer participates;
(7) acceptance of credit cards;
(8) fee for initial consultation and fee schedule, subject to the requirements of subdivisions (h) and (i) of this rule; and
(9) a listing of the name and geographic location of a lawyer or law firm as a sponsor of a public service announcement or charitable, civic, or community program or event.; and
(10) a lawyer referral service may advertise its name, location, telephone number, the referral fee charged, its hours of operation, the process by which referrals are made, the areas of law in which referrals are offered, the geographic area in which the lawyers practice to whom those responding to the advertisement will be referred, and, if applicable, its nonprofit status, its status as a lawyer referral service approved by The Florida Bar, and the logo of its sponsoring bar association.
(o) Advertising in Law Director. Nothing in this rule prohibits a lawyer or law firm from permitting the inclusion in law lists and law directories intended primarily for the use of the legal profession of such information as has traditionally been included in these publications.
(p) Maintaining Copies of Advertisements. A copy or recording of an advertisement or written or recorded communication shall be submitted to the standing committee on advertising in accordance with the requirements of rule 4-7.5, and *1046 the lawyer shall retain a copy or recording for 3 years after its last dissemination along with a record of when and where it was used.
(q) Payment for Recommendations; Lawyer Referral Service Fees. A lawyer shall not give anything of value to a person for recommending the lawyer’s services, except that a lawyer may pay the reasonable cost of advertising or written or recorded communication permitted by these rules, may pay the usual charges of a lawyer referral service or other legal service organization, and may purchase a law practice in accordance with rule 4-1.17.
Comment
To assist the public in obtaining legal services, lawyers should be allowed to make known their services not only through reputation but also through organized information campaigns in the form of advertising. The public’s need to know about legal services can be fulfilled in part through advertising that provides the public with useful, factual information about legal rights and needs and the availability and terms of legal services from a particular lawyer or law firm. This need is particularly acute in the case of persons of moderate means who have not made extensive use of legal services. Nevertheless, certain types of advertising by lawyers create the risk of practices that are misleading or overreaching and can create unwarranted expectations by persons untrained in the law. Such advertising can also adversely affect the public’s confidence and trust in our judicial system.
In order to balance the public’s need for useful information, the state’s need to ensure a system by which justice will be administered fairly and properly, as well as the state’s need to regulate and monitor the advertising practices of lawyers, and a lawyer’s right to advertise the availability of the lawyer’s services to the public, this rule permits public dissemination of information concerning a lawyer’s name or firm name, address, and telephone number; the kinds of services the lawyer will undertake; the basis on which the lawyer’s fees are determined, including prices for specific services and payment and credit arrangements; a lawyer’s foreign language ability; names of references and, with their consent, names of clients regularly represented; and other factual information that might invite the attention of those seeking legal assistance.
Television is now one of the most powerful media for conveying information to the public; a blanket prohibition against television advertising, therefore, would impede the flow of information about legal services to many sectors of the public. However, the unique characteristics of electronic media, including the pervasiveness of television and radio, the ease with which these media are abused, and the passiveness of the viewer or listener, make the electronic media especially subject to regulation in the public interest. Therefore, greater restrictions on the manner of television and radio advertising are justified than might be appropriate for advertisements in the other media. To prevent abuses, including potential interferences with the fair and proper administration of justice and the creation of incorrect public perceptions or assumptions about the manner in which our legal system works, and to promote the public’s confidence in the legal profession and this country’s system of justice while not interfering with the free flow of useful information to prospective users of legal services, it is necessary also to restrict the techniques used in television and radio advertising.
Subdivisions (b) and (e) of this rule are designed to ensure that the advertising is not misleading and does not create unreasonable or unrealistic expectations about the results the lawyer may be able to obtain in any particular case, and to encourage a focus on providing useful information to the public about legal rights and needs and the availability and terms of legal services. Thus, the rule allows all lawyer advertisements in which the lawyer personally appears to explain a legal right, the services the lawyer is available to perform, and the lawyer’s background and experience.
*1047 The prohibition in subdivision (b) against any background sound other than instrumental music precludes, for example, the sound of sirens or car crashes and the use of jingles. Subdivision 4-7.1(d) forbids use of testimonials or endorsements from clients or anyone else. Subdivision (e) prohibits dramatizations in any advertisement, including those appearing on the electronic media. This is intended to preclude the use of scenes creating suspense, scenes containing exaggerations or situations calling for legal services, scenes creating consumer problems through characterization and dialogue ending with the lawyer solving the problem, and the audio or video portrayal of an event or situation. While informational illustrations may attract attention to the advertisement and help potential clients to understand the advertisement, self-laudatory illustrations are inherently misleading and thus prohibited. As an example, a drawing of a fist, to suggest the lawyer’s ability to achieve results, would not be informational and would be barred.
Regardless of medium, a lawyer’s advertisement should provide only useful, factual information presented in a nonsensational manner. Advertisements utilizing slogans or jingles, oversized electrical and neon signs, or sound tracks fail to meet these standards and diminish public confidence in the legal system.
The disclosure required by subdivision (d) of this rule is designed to encourage the informed selection of a lawyer. As provided in rule 4-7.3, a prospective client is entitled to know the experience and qualifications of any lawyer seeking to represent the prospective client. The required disclosure would be ineffective if it appeared in an advertisement so briefly or minutely as to be overlooked or ignored. Thus in print advertisements, the type size used for the disclosure must be sufficient to cause the disclosure to be conspicuous; in recorded advertisements, the disclosure must be spoken at a speed that allows comprehension by the average listener. This rule does not specify the exact type size to be used for the disclosure or the exact speed at which the disclosure may be spoken; good faith and common sense should serve as adequate guides for any lawyer.
Neither this rule nor rule 4-7.4 prohibits communications authorized by law, such as notice to members of a class in class action litigation.
This rule applies to advertisements and written communications directed at prospective clients and concerning a lawyer’s or law firm’s availability to provide legal services. The rule does not apply to communications between lawyers, including brochures used for recruitment purposes. Paying others to recommend a lawyer
A lawyer is allowed to pay for advertising permitted by this rule and for the purchase of a law practice in accordance with the provisions of rule 4-1.17, but otherwise is not permitted to pay or provide other tangible benefits to another person for procuring professional work. However, a legal aid agency or prepaid legal services plan may pay to advertise legal services provided under its auspices. Likewise, a lawyer may participate in lawyer referral programs and pay the usual fees charged by such programs, subject, however, to the limitations imposed by rule 4-7.8. Subdivision (q) does not prohibit paying regular compensation to an assistant, such as a secretary or advertising consultant, to prepare communications permitted by this rule.
RULE 4-7.5 EVALUATION OF ADVERTISEMENTS
(a) Advisory Opinion. A lawyer may obtain an advisory opinion concerning the compliance of a contemplated advertisement or written communication with these rules in advance of disseminating the advertisement or communication by submitting the material and fee specified in subdivision (d) to the standing committee on advertising at least 15 days prior to such dissemination. If the committee finds that the advertisement complies with these rules, the lawyer’s voluntary submission shall be deemed to satisfy the filing requirement set forth in subdivision (b) of this rule.
*1048 (b) Filing Copy of Advertisement. Subject to the exemptions stated in subdivision (e)of this rule, any lawyer who advertises services through any public media or through written communication not involving solicitation as defined in rule 4-7.4 shall file a copy of each such advertisement with the standing committee on advertising for evaluation of compliance with these rules. The copy shall be filed either prior to or concurrently with the lawyer's first dissemination of the advertisement or written communication and shall be accompanied by the information and fee specified in subdivision (d).
(c) Exemptions from Filing Requirement. The following are exempt from the filing requirements of subdivision (b) of this rule:
(1) Any advertisement in any of the public media, including the yellow pages of telephone directories, that contains no illustrations and no information other than that set forth in rule 4-7.2(n)(l)-(810). This exemption extends to television advertisements only if the visual display featured in such advertisements is limited to the words spoken by the announcer.
(2) A brief announcement in any of the public media that identifies a lawyer or law firm as a contributor to a specified charity or as a sponsor of a specified charitable, community, or public interest program, activity, or event, provided that the announcement contains no information about the lawyer or law firm other than name, the city where the law offices are located, and the fact of the sponsorship or contribution.
(3) A listing or entry in a law list.
(4) A newsletter mailed only to existing clients or other lawyers.
(5) Professional announcement cards stating new or changed associations, new offices, and similar changes relating to a lawyer or law firm, and that are mailed only to other lawyers, relatives, close personal friends, and existing clients.
(d) Contents of Filing. A filing with the committee as required by subdivision (b) or as permitted by subdivision (a) shall consist of:
(1) a copy of the advertisement or communication in the form or forms in which it is to be disseminated (e.g., videotapes, audiotapes, print media, photographs of outdoor advertising);
(2) a transcript, if the advertisement or communication is on videotape or audiotape;
(3) a statement listing all media in which the advertisement or communication will appear, the anticipated frequency of use of the advertisement or communication in each medium in which it will appear, and the anticipated time period during which the advertisement or communication will be used; and
(4) a fee to be set by the board of governors but not exceeding $50, payable to The Florida Bar, to offset the cost of evaluation and review of advertisements submitted under these rules and the cost of enforcing these rules.
(e) Evaluation of Advertisements. The committee shall evaluate all advertisements and written communications filed with it pursuant to this rule for compliance with the applicable rules set forth in this sub-chapter 4-7. The committee shall complete its evaluation within 15 days of receipt of a filing unless the committee determines that there is reasonable doubt that the advertisement or written communication is in compliance with the rules and that further examination is warranted but cannot be completed within the 15-day period, and so advises the lawyer within the 15-day period. In the latter event, the committee shall complete its review as promptly as the circumstances reasonably allow. If the committee does not send any communication to the lawyer within 15 days, the advertisement will be deemed approved.
(f) Substantiating Information. If requested to do so by the committee, the filing lawyer shall submit information to substantiate representations made or implied in that lawyer’s advertisement or written communication.
(g) Notice of Noncompliance; Effect of Continued Use of Advertisement. When *1049 the committee determines that an advertisement or written communication is not in compliance with the applicable rules, the committee shall advise the lawyer that dissemination or continued dissemination of the advertisement or written communication may result in professional discipline.
(h) Committee Determination Not Binding; Evidence. A finding by the committee of either compliance or noncompliance shall not be binding in a grievance proceeding, but may be offered as evidence.
(i) Change of Circumstances; Refiling Requirement. If a change of circumstances occurring subsequent to the committee’s evaluation of an advertisement or written communication raises a substantial possibility that the advertisement or communication has become false or misleading as a result of the change in circumstances, the lawyer shall promptly refile the advertisement or a modified advertisement with the committee along with an explanation of the change in circumstances and an additional fee to be set by the board of governors but not exceeding $50.
Comment
This rule has a dual purpose: to enhance the court’s and the bar’s ability to monitor advertising practices for the protection of the public and to assist members of the bar to conform their advertisements to the requirements of these rules. This rule gives lawyers the option of submitting their advertisements to the committee for review prior to first use or submitting their advertisements at the time of first use. In either event, the committee will advise the filing lawyer in writing whether the advertisement appears to comply with the rules. The committee’s opinion will be advisory only, but may be considered as evidence of a good faith effort to comply with these rules. A lawyer who wishes to be able to rely on the committee’s opinion as demonstrating the lawyer’s good faith effort to comply with these rules has the responsibility of supplying the committee with all information material to a determination of whether an advertisement is false or misleading.
4-8. MAINTAINING THE INTEGRITY OF THE PROFESSION
RULE 4-8.4 MISCONDUCT
A lawyer shall not:
(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
(b) commit a criminal act that reflects adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer in other respects;
(c) engage in conduct involving dishon- . esty, fraud, deceit, or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice;
(e) state or imply an ability to influence improperly a government agency or official; or
(f) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law-; or
(g) fail to respond, in writing, to any inquiry by a disciplinary agency when such agency is conducting an investigation into the lawyer’s conduct.
Comment
Many kinds of illegal conduct reflect adversely on fitness to practice law, such as offenses involving fraud and the offense of willful failure to file an income tax return. However, some kinds of offense carry no such implication. Traditionally, the distinction was drawn in terms of offenses involving “moral turpitude.” That concept can be construed to include offenses concerning some matters of personal morality, such as adultery and comparable offenses, that have no specific connection to fitness for the practice of law. Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty, or breach of trust or serious interference with the administration of justice are in that category. A pattern of re *1050 peated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation.
A lawyer may refuse to comply with an obligation imposed by law upon a good faith belief that no valid obligation exists. The provisions of rule 4-1.2(d) concerning a good faith challenge to the validity, scope, meaning, or application of the law apply to challenges of legal regulation of the practice of law.
Lawyers holding public office assume legal responsibilities going beyond those of other citizens. A lawyer’s abuse of public office can suggest an inability to fulfill the professional role of attorney. The same is true of abuse of positions of private trust such as trustee, executor, administrator, guardian, or agent and officer, director, or manager of a corporation or other organization.
A lawyer’s obligation to respond to an inquiry by a disciplinary agency is stated in subdivision (g) and rules 3-4.8 and 3-7.6(g)(2). While response is mandatory, the lawyer may deny the charges or assert any available privilege or immunity or interpose any disability that prevents disclosure of certain matter. A response containing a proper invocation thereof is sufficient under the Rules Regulating The Florida Bar. This obligation is necessary to ensure the proper and efficient operation of the disciplinary system.
CHAPTER 5. RULES REGULATING TRUST ACCOUNTS
5-1. GENERALLY
RULE 5-1.1 TRUST ACCOUNTS
(a)Nature of Money or Property Entrusted to Attorney. Money or other property entrusted to an attorney for a specific purpose, including advances for costs and expenses, is held in trust and must be applied only to that purpose. Money and other property of clients coming into the hands of an attorney are not subject to counterclaim or setoff for attorney’s fees, and a refusal to account for and deliver over such property upon demand shall be deemed a conversion. This is not to preclude the retention of money or other property upon which the lawyer has a valid lien for services or to preclude the payment of agreed fees from the proceeds of transactions or collection. Controversies as to the amount of fees are not grounds for disciplinary proceedings unless the amount demanded is clearly excessive, extortionate, or fraudulent. In a controversy alleging a clearly excessive, extortionate, or fraudulent fee, announced willingness of an attorney to submit a dispute as to the amount of a fee to a competent tribunal for determination may be considered in any determination as to intent or in mitigation of discipline; provided, such willingness shall not preclude admission of any other relevant admissible evidence relating to such controversy, including evidence as to the withholding of funds or property of the client, or to other injury to the client occasioned by such controversy.
(b) Trust Accounts Required. Any bank or savings and loan association account maintained by a member of The Florida Bar to comply with rule 4-1.15, Rules of Professional Conduct, is and shall be clearly labeled and designated as a trust account. Any safe deposit box used in connection with the practice of law in Florida maintained by a member of The Florida Bar to comply with rule 4-1.15 shall be located in this state unless the client otherwise consents in writing. A member of The Florida Bar shall advise any institution in which such deposit box is located that it may include property of clients.
(c) Trust Accounts as Official Records. A member of The Florida Bar shall preserve or cause to be preserved the records of all bank and savings and loan association accounts or other records pertaining to the funds or property of a client or a third party maintained in compliance with rule 4-1.15 for a period of not less than 6 years subsequent to the final conclusion of the representation of a client relative to such funds or property. Such records shall include checkbooks, cancelled checks, check stubs, vouchers, ledgers and journals, closing statements, accountings or other statements of disbursements rendered to clients *1051 or other third parties with regard to trust funds, or similar equivalent records clearly and expressly reflecting the date, amount, source, and reason for all receipts, withdrawals, deliveries, and disbursements of the funds or property of a client or third party. Such records shall be kept pursuant to these rules as a specific prerequisite to the right to receive, deliver, and disburse funds or property of a client or third party and to have a public aspect relating to the protection of clients and to fitness of a member of The Florida Bar to practice law. In any instance of an alleged violation by a member of The Florida Bar of this rule or of any of the Rules of Professional Conduct, such records insofar as they may relate in any way to the transaction, occurrence, or client in question shall be produced by the members of The Florida Bar for inspection, audit, and copying by a designated representative of The Florida Bar upon the direction of this court, a grievance committee, the board of governors if acting pursuant to rule 3-7.5(b), or a referee. Such records or copies thereof shall be admissible in evidence in any proceeding under this rule; provided notice of such intended use shall be given to any client involved, if practicable, unless such client is already aware of such intended use, and upon good cause shown by such client the admission of the same shall be under such conditions as shall be reasonably calculated thereafter to protect the confidences of such client in the event that the proceedings otherwise become public records. Permissible means of protection shall not prejudice the respondent and may include but are not limited to excision, in camera production, retention in sealed envelopes, or similar devices. Failure to maintain such records or to produce them upon such direction shall constitute ground for disciplinary action under this rule without regard to any other matter. The cost of any audit or investigation necessitated by such failure may be taxed against a respondent.
(d) Trust Accounting. Minimum trust accounting records shall be maintained and minimum trust accounting procedures must be followed by all attorneys practicing in Florida who receive or disburse trust money or property.
(e) Interest on Trust Accounts (IOTA) Program.
(1) Definitions. As used in rule 5-1.1(e), the term:
(A) “nominal or short term” describes funds of a client or third person that, pursuant to rule 5-1.1(e)(7), the lawyer has determined cannot practicably be placed at interest for the benefit of the client or third person;
(B) “Foundation” means The Florida Bar Foundation, Inc.;
(C) “IOTA account” means a trust account described in rule 5-1.1(e)(2).
(2) Required Participation. All nominal or short-term funds belonging to clients or third persons that are placed in trust with any member of The Florida Bar practicing from an office or other business location within the state of Florida shall be deposited into one or more interest-bearing trust accounts for the benefit of the Foundation, except as provided in rule 4-1.15 with respect to funds maintained other than in a bank account, or as provided in rule 5-1.2(a). Only trust funds that are nominal or short term shall be deposited into an IOTA account. The member shall certify annually, in writing, that the member is in compliance with, or is exempt from, the provisions of rule 5-1.1(d).
(3) Eligible Financial Institutions. An IOTA account shall be established with any bank or savings and loan association authorized by federal or state laws to do business in Florida and insured by the Federal Deposit Insurance Corporation, the Federal Savings and Loan Insurance Corporation, or any successor insurance corporation(s) established by federal or state laws. The funds in each IOTA account shall be subject to withdrawal upon request and without delay.
(4)Interest Rates. The rate of interest on any IOTA account shall not be less than the rate paid by the financial institution to non-IOTA account depositors. Higher rates offered by the financial institution to *1052 customers whose deposits exceed certain time or quantity minimums may be obtained by a lawyer or law firm for IOTA accounts on some or all of the deposited funds so long as there is no impairment of the right to immediately withdraw or transfer principal.
(5) Remittance Instructions. Lawyers or law firms shall direct the financial institution:
(A) to remit interest on the balance in the IOTA account, in accordance with the financial institution’s standard practice for non-IOTA account depositors, less reasonable service charges or fees, if any, in connection with the IOTA account, at least quarterly, to the Foundation;
(B) to transmit with each remittance to the Foundation a statement showing the name of the lawyer or law firm from whose IOTA account the remittance is sent, the lawyer’s or law firm's IOTA trust account number as assigned by the financial institution, the rate of interest applied, the period for which the remittance is made, the total interest earned during the remittance period, the amount of any service charges or fees assessed during the remittance period, and the net amount of interest remitted for the period; and
(C) to transmit to the depositing lawyer or law firm, for each remittance, a report showing the amount paid to the Foundation, the rate of interest applied, and the period for which the report is made.
(6) Notice to Foundation. Lawyers or law firms shall advise the Foundation at Post Office Box 1553, Orlando, Florida 32802-9919, of the establishment of an IOTA account. Such notice shall include: the IOTA account number as assigned by the financial institution; the name of the lawyer or law firm on the IOTA account; the financial institution name; the financial institution address; and the name and Florida Bar attorney number of the lawyer, or of each member of The Florida Bar in a law firm, practicing from an office or other business location within the state of Florida that has established an IOTA account.
(7) Determination of Nominal or Short-Term Funds. The lawyer shall exercise good faith judgment in determining upon receipt whether the funds of a client or third person are nominal or short term. In the exercise of this good faith judgment, the lawyer shall consider such factors as:
(A) the amount of a client’s or third person’s funds to be held by the lawyer or law firm;
(B) the period of time such funds are expected to be held;
(C) the likelihood of delay in the relevant transaction(s) or proceeding(s);
(D) The cost to the lawyer or law firm of establishing and maintaining an interest-bearing account or other appropriate investment for the benefit of the client or third person; and .
(E) minimum balance requirements and/or service charges or fees imposed by the financial institution.
The determination of whether a client’s or third person’s. funds are nominal or short term shall rest in the sound judgment of the lawyer or law firm. No lawyer shall be charged with ethical impropriety or other breach of professional conduct based on the exercise of such good faith judgment.
(8) Small IOTA Accounts. The Foundation may establish procedures for a lawyer or law firm to maintain an interest-free trust account for client and third-person funds that are nominal or short term when their nominal or short-term trust funds cannot reasonably be expected to produce or have not produced interest income net of reasonable financial institution service charges or fees.
(9) Confidentiality. The Foundation shall protect the confidentiality of information regarding a lawyer’s or law firm’s trust account obtained by virtue of rule 5-1.1(e).
(f) Unidentifiable Trust Fund Accumulations and Trust Funds Held for Missing Owners. When an attorney’s trust account contains an unidentifiable accumulation of trust funds or property, or trust funds or property held for missing owners, such *1053 funds or property shall be so designated. Diligent search and inquiry shall then be made by the attorney to determine the beneficial owner of any unidentifiable accumulation or the address of any missing owner. If the beneficial owner of an unidentified accumulation is determined, the funds shall be properly identified as the lawyer’s trust property. If a missing beneficial owner is located, the trust funds or property shall be paid over or delivered to the beneficial owner if the owner is then entitled to receive the same. Trust funds and property that remain unidentifiable and funds or property that are held for missing owners after being designated as such shall, after diligent search and inquiry fail to identify the beneficial owner or owner’s address, be disposed of as provided in chapter 717, Florida Statutes.
(g) Disbursement against Uncollected Funds. A lawyer generally may not use, endanger, or encumber money held in trust for a client for purposes of carrying out the business of another client without the permission of the owner given after full disclosure of the circumstances. However, certain categories of trust account deposits are considered to carry a limited and acceptable risk of failure so that disbursements of trust account funds may be made in reliance on such deposits without disclosure to and permission of clients owning trust account funds subject to possibly being affected. Except for disbursements based upon any of the 6 categories of limited-risk uncollected deposits enumerated below, a lawyer may not disburse funds held for a client or on behalf of that client unless the funds held for that client are collected funds. For purposes of this provision, “collected funds” means funds deposited, finally settled, and credited to the lawyer’s trust account. Notwithstanding that a deposit made to the lawyer’s trust account has not been finally settled and credited to the account, the lawyer may disburse funds from the trust account in reliance on such deposit under, any of the following circumstances:
(1) when the deposit is made by certified check or cashier’s check;
(2) when the deposit is made by a check or draft representing loan proceeds issued by a federally or state-chartered bank, savings bank, savings and loan association, credit union, or other duly licensed or chartered institutional lender;
(3) when the deposit is made by a bank check, official check, treasurer’s check, money order, or other such instrument issued by a bank, savings and loan association, or credit union within the state of Florida when the lawyer has reasonable and prudent grounds to believe the instrument will clear and constitute collected funds in the lawyer’s trust account within a reasonable period of time;
(4) when the deposit is made by a check drawn on the trust account of a lawyer licensed to practice in the state of Florida or on the escrow or trust account of a real estate broker licensed under chapter 475, Florida Statutes, when the lawyer has a reasonable and prudent belief that the deposit will clear and constitute collected funds in the lawyer’s trust account within a reasonable period of time;
(5) when the deposit is made by a check issued by the United States, the State of Florida, or any agency or political subdivision of the State of Florida;
(6) when the deposit is made by a check or draft issued by an insurance company or title insurance company (not a title agency) authorized to do business in the state of Florida and the lawyer has a reasonable and prudent belief that the instrument will clear and constitute collected funds in the trust account within a reasonable period of time.
A lawyer’s disbursement of funds from a trust account in reliance on deposits that are not yet collected funds in any circumstances other than those set forth above, when it results in funds of other clients being used, endangered, or encumbered without authorization, may be grounds for a finding of professional misconduct. In any event, such a disbursement is at the risk of the lawyer making the disbursement. If any of the deposits fail, the lawyer, upon obtaining knowledge of the fail *1054 ure, must immediately act to protect the property of the lawyer’s other clients. However, if the lawyer accepting any such check personally pays the amount of any failed deposit or secures or arranges payment from sources available to the lawyer other than trust account funds of other clients, the lawyer shall not be considered guilty of professional misconduct.
CHAPTER 6. LEGAL SPECIALIZATION AND EDUCATION PJROGRAMS
6-3. FLORIDA CERTIFICATION PLAN
RULE 6-3.2 CERTIFICATION COMMITTEES
For each certification area approved by the Supreme Court of Florida, a ?9-mem-ber committee, bearing the name of the area, shall be appointed by the president of The Florida Bar, with the advice and consent of the board of governors. Initial committee appointees shall be eminent attorneys in each field, shall be members in good standing of The Florida Bar, shall have been admitted to The Florida Bar no less than 10 years, and must meet such other requirements as may in the future be promulgated by the board of legal specialization and education. Initial committee appointees shall be certified in the applicable area of practice by reason of appointment to that area’s certification committee. The committee members shall hold office for 3 years and until their successors are appointed. The committee members shall be appointed to staggered terms of office, and the initial appointees shall serve as follows: 2 members shall serve until June 30 next following their appointment, 2 members shall serve until the second June 30 following their appointment, and 3 members shall serve until the third June 30 following their appointment. Subsequent appointees must be certified in the area at the time of appointment, must be members in good standing of The Florida Bar, and must meet such other requirements as may be promulgated by the board of legal specialization and education.
RULE 6-3.5 STANDARDS FOR CERTIFICATION
(a) Standards for Certification. The minimum standards for certification are prescribed below. Each area of certification established under this chapter may contain higher or additional standards if approved by the Supreme Court of Florida.
(b) Eligibility for Application. A member in good standing of The Florida Bar who is currently engaged in the full-time practice of law and who meets the area’s standards may apply for certification. From the date the application is filed to the date the certificate is issued, the applicant must continue to practice law full-time and remain a member in good standing of The Florida Bar. The certificate issued by the board of legal specialization and education shall state that the lawyer is a “Board Certified (area of certification) Lawyer.”
(c) Minimum Requirements for Qualifying for Certification with Examination. Minimum requirements for qualifying for certification by examination are as follows:
(1) A minimum of 5 years in the practice of law on a full-time basis. The “practice of law” means full-time legal work performed primarily for purposes of rendering legal advice or representation. Service as a judge of any court of record shall be deemed to constitute the practice of law. Employment by the government of the United States, any state (including subdivisions of the state such as counties or municipalities), or the District of Columbia, and employment by a public or private corporation or other business shall be deemed to constitute the practice of law if the individual was required as a condition of employment to be a member of the bar of any state or the District of Columbia.
(2) A satisfactory showing of substantial involvement in the particular area for which certification is sought during 3 of the last 5 years preceding the application for certification.
(3) A satisfactory showing of such continuing legal education in a particular field of law for which certification is sought as *1055 set by that area’s standards but in no event less than 10 certification hours per year.
(4) Passing a written and/or oral examination applied uniformly to all applicants to demonstrate sufficient knowledge, skills, and proficiency in the area for which certification is sought and in the various areas relating to such field. The award of an LL.M. degree from an approved law school in the area for which certification is sought within 8 years of application may substitute as the written examination required in this subdivision if the area’s standards so provide.
(5) Current certification by an approved organization in the area for which certification is sought within 5 years of filing an application may, at the option of the certification committee, substitute as partial equivalent credit, including the written examination required in subdivision (e)(4). Approval will be by the board of legal specialization and education following a positive or negative recommendation from the certification committee.
(6) Peer review shall be used to solicit information to determine that an applicant for certification has achieved recognition as having a level of competence indicating proficient performance in handling the usual matters in the speciality field. An applicant otherwise qualified for certification may be determined unqualified on the basis of peer review.
Peer review shall be mandatory for all applicants and may not be eliminated by equivalents. Such peer review shall solicit, from persons familiar with the applicant, as much information as is reasonably necessary to accurately assess the applicant’s competence, performance, and reputation. This procedure may include solicitation of public input and independent inquiry apart from written references.
As part of the peer review process, the board of legal specialization and education and its area committees shall review an applicant’s professional ethics and disciplinary record. Such review shall include both disciplinary complaints and malpractice actions against an applicant. An applicant otherwise qualified may be denied certification on the basis of this record. Certification may also be withheld pending the outcome of the disciplinary complaint or malpractice action.
(d) Minimum Requirements for Qualification without Examination. When certification without examination is available in an area, the minimum requirements for such certification are as follows:
(1) A minimum of 20 years in the practice on a full-time basis.
(2) A satisfactory showing of competence and substantial involvement in the particular area for which certification is sought during 5 of the last 10 years, including the year immediately preceding the application for certification. Substantial involvement in the practice of law for the 1 year immediately preceding the application may be waived for good cause shown.
(3) A satisfactory showing of such continuing legal education in a particular field of law for which certification is sought as set by that area’s standards but in no event less than 15 hours per year.
(4) Satisfactory peer review and professional ethics record in accordance with subdivision (c)(6).
(5) Certification without examination may be granted only to individuals who apply within 2 years after the date on which the particular area is approved by the Supreme Court of Florida.
(6) Payment of any fees required by the plan.
RULE 6-3.12 AMENDMENTS
Standards for individual areas of certification may be amended by the board of governors consistent with the notice and publication requirements set forth in rule 1-12.1.
6-7. STANDARDS FOR CERTIFICATION OF A BOARD CERTIFIED ESTATE PLANNING AND PROBATE WILLS, TRUSTS AND ESTATES LAWYER
RULE 6-7.1 GENERALLY
A lawyer who is a member in good standing of The Florida Bar and who meets the *1056 standards prescribed below may be issued an appropriate certificate identifying the lawyer as a “Board Certified Estate Planning and -Probate Wills, Trusts, and Estates Lawyer.” The purpose of the standards is to identify those lawyers who practice in the area of estate planning and probate wills, trusts, and estates and have demonstrated special knowledge, skills, and proficiency to be properly identified to the public as certified estate planning- and-pr-o-bate wills, trusts and estates lawyers.
RULE 6-7.2 DEFINITIONS
(a) Estate Planning and Probate Wills, Trusts, and Estates. “Estate planning and probate Wills, trusts and estates” is the practice of law dealing with all aspects of the analysis and planning for the conservation and disposition of estates, giving due consideration to the applicable tax consequences, both federal and state; the preparation of legal instruments to effectuate estate plans; administering estates, including tax related matters, both federal and state; and probate litigation.
(b) Practice of Law. The “practice of law” for this area is defined as set out in rule 6-3.5(c)(1). Notwithstanding anything in the definition to the contrary, legal work done primarily for any purpose other than legal advice or representation (including, but not limited to, work related to the sale of insurance or retirement plans or work in connection with the practice of a profession other than the law) shall not be treated as the practice of law. Service as a judge of any court of record shall be deemed to constitute the practice of law. Practice of law that otherwise satisfies these requirements but that is on a part-time basis will satisfy the requirement if the balance of the applicant’s activity is spent as a teacher of estate planning or probate wills, trusts and estates subjects in an accredited law school.
RULE 6-7.3 MINIMUM STANDARDS
(a) Minimum Period of Practice. Every applicant shall have been engaged in the practice of law in the United States, or engaged in the practice of United States law while in a foreign country, and shall have been a member in good standing of the bar of any state of the United States or the District of Columbia for a period of 5 years as of the date of application.
Notwithstanding the definition of “practice' of law” in rule 6 — 3.5(c)(1), receipt of an LL.M. degree in taxation or estate planning and probate (or such other related fields approved by the board and estate-planning and probate wills, trusts, and estates certification committee) from an approved law school shall be deemed to constitute 1 year of the practice of law for purposes of the 5-year practice requirement (but not the 5-year bar membership requirement) under this subdivision; provided, however, an applicant may not receive credit for more than 1 year of practice for any 12-month period under this subdivision; accordingly, for example, an applicant who, while being engaged in the practice of law, receives an LL.M. degree by attending night classes, would not receive credit for the practice of law requirement by virtue of having received the LL.M. degree.
(b) Substantial Involvement. Every applicant must demonstrate substantial involvement in the practice of law in estate planning, probate, or probate related activities planning for incapacity, administration of estates and trusts, fiduciary and transfer taxation, probate and trust law, estates and trust litigation, and homestead law during the 5 years immediately preceding the date of application, including devoting not less than 40 percent of practice to estate planning^ and-probate-matters planning for incapacity, administration of estates and trusts, fiduciary and transfer taxation, probate and trust law, estates and trust litigation, and homestead law in this state during each of the 2 years immediately preceding application. Service as a judge in the probate division of the circuit court of this state during 6 months or more of a calender year shall satisfy a year of substantial involvement. Except for the 2 years immediately preceding application, upon an applicant’s request and the recommendation of the estate planning and probate wills, trusts, and estates certification committee, the board of legal specialization and education may waive the requirement *1057 that the 5 years be “immediately preceding” the date of application if the board of legal specialization and education determines the waiver is warranted by special and compelling circumstances. Except for the 2 years immediately preceding application, receipt of an LL.M. degree in estate planning and probate (or such other degree containing substantial estate planning and probate content as approved by the board of legal specialization and education) from an approved law school may substitute for 1 year of substantial involvement. An applicant must furnish information concerning the frequency of work and the nature of the issues involved. For the purposes of this section the “practice of law” shall be as defined in rule 6-3.5(c)(l) except that it shall also include time devoted to lecturing and/or authoring books or articles on estate planning-and probate wills, trusts, and estates if the applicant was engaged in the practice of law during such period. Demonstration of compliance with this requirement shall be made initially through a form of questionnaire approved by the estate planning and probate wills, trusts, and estates certification committee, but written or oral supplementation may be required.
(c) Peer Review. Every applicant shall submit the names and addresses of 5 other attorneys who are familiar with the applicant’s practice, not including attorneys who currently practice in the applicant’s law firm, who can attest to the applicant’s reputation for professional competence and substantial involvement in the field of estate planning-and probate law wills, trusts, and estates, The board of legal specialization and education and the estate planning and probate-wills, trusts, and estates certification committee may authorize references from persons other than attorneys in such cases as they deem appropriate. The board of legal specialization and education and the — estate planning and probate wills, tr-asts-r-and estates certification committee may also make such additional inquiries as they deem appropriate to complete peer review, as provided elsewhere in these rules-.
(d) Education. Every applicant must demonstrate that, during the 3-year period immediately preceding the date of the application, the applicant has met the continuing legal education requirements in estate planning and probate wills, trusts, and estates as follows. The required number of hours shall be established by the board of legal specialization and education and shall in no event be less than 90 hours. Credit for attendance at continuing legal education seminars shall be given only for programs that are directly related to estate planning and probate wills, trusts and estates. The education requirement may be satisfied by 1 or more of the following:
(1) attendance at continuing legal education seminars meeting the requirements set forth above;
(2) lecturing at, and/or serving on the steering committee of, such continuing legal education seminars;
(3) authoring articles or books published in professional periodicals or other professional publications;
(4) teaching courses in “estate planning and probate” estates and trusts, fiduciary administration, fiduciary and transfer taxation, and homestead law at an approved law school or other graduate level program presented by a recognized professional education association;
(5) completing such home study programs as may be approved by the board of legal specialization and education and the estate-planning and probate wills, trusts, and estates certification committee, subject to the limitation that no more than 50 percent of the required number of hours of education may be satisfied through home study programs; and
(6) such other methods as may be approved by the board of legal specialization and education and the estate planning-and probate wills, trusts, and estates certification committee.
The board of legal specialization and education and the estate-planning and probate wills, trusts, and estates certification committee shall, by rule or regulation, establish standards applicable to this rule, in- *1058 eluding, but not limited to, the method of establishment of the number of hours allo-cable to any of the above-listed subdivisions. Such rules or regulations shall provide that hours shall be allocable to each separate but substantially different lecture, article, or other activity described in subdivisions (2), (3), and (4) above.
(e) Examination. The applicant must pass an examination that will be practical and comprehensive and designed to demonstrate special knowledge, skills, and proficiency in estate planning, and-probate law to postmortem planning, planning for incapacity, administration of estates and trusts, fiduciary and transfer taxation, substantive and procedural aspects of probate and trust law, estates and trust litigation, homestead law, joint tenancies, tenancies by the entirety, conflicts of interest, and other ethical considerations. Such examination shall justify the representation of special competence to the legal profession and the public.
RULE 6-7.4 RECERTIFICATION
(a)Eligibility. Recertification must be obtained every 5 years. To be eligible for recertification, an applicant must meet the following requirements:
(1) A satisfactory showing, as determined by the board of legal specialization and education and the estate planning and probate wills, trusts, and estates certification committee, of continuous and substantial involvement in estate planning-and probate wills, trusts, and estates law throughout the period since the last date of certification. The demonstration of substantial involvement of more than 40 percent during each year after certification or prior recertification shall be made in accordance with the standards set forth in rule 6-7.3(b).
(2) Completion of at least 125 hours of approved continuing legal education since the filing of the last application for certification. This requirement shall be satisfied by the applicant’s participation in continuing legal education approved by The Florida Bar pursuant to rule 6-7.3(d)(l) through (6).
(3) Submission of the names and addresses of 3 individuals who are active in estate -planning-and~probate wills, trusts, and estates, including but not limited to lawyers, trust officers, certified public accountants, and judges who are familiar with the applicant’s practice, excluding persons who are currently employed by or practice in the applicant’s law firm, who can attest to the applicant’s reputation for professional competence and substantial involvement in the field of estate planning and- probate wills, trusts, and estates law during the period since the last date of certification. The board of legal specialization and education or the estate.planning and probate wills, trusts, and estates certification committee may solicit references from persons other than those whose names are submitted by the applicant in such cases as they deem appropriate. The board of legal specialization and education or the estate ■ planning and-probate wills, trusts, and estates certification committee may also make such additional inquiries as it deems appropriate.
(b) Denial of Recertification. The board of legal specialization and education may deny recertification based upon any information received from the peer review or from any individual referenced in subdivision (a)(3), above.
(c) Examination Requirement. If, after reviewing the material submitted by an applicant for recertification and the peer review, the estate - planning ■ and probate wills, trusts, and estates certification committee determines the applicant may not meet the standards for estate-planning-and probate wills, trusts, and estates certification established under this chapter, the estate planning and probate wills, trusts, and estates certification committee may require, as a condition of recertification, that the applicant pass the examination given by the estate planning and-probate wills, trusts, and estates certification committee to new applicants.
6-8. STANDARDS FOR CERTIFICATION OF A BOARD CERTIFIED CRIMINAL LAWYER
RULE 6-8.3 CRIMINAL TRIAL; MINIMUM STANDARDS
(a) Substantial Involvement. To become certified as a criminal trial lawyer, an *1059 applicant must demonstrate substantial involvement in criminal trial law. Substantial involvement shall include the following:
(1) At least 5 years of the actual practice of law of which at least 30 percent has been spent in active participation in criminal trial law. At least 3 years of this practice shall be immediately preceding application or, during those 3 years, the applicant may have served as a judge of a court of general jurisdiction adjudicating criminal trial matters.
(2) The trial of a minimum of 25 criminal cases. Of these 25 cases, at least 20 shall have been jury trials and at least 15 shall have involved felony charges. On good cause shown, for satisfaction in part of the 25 criminal trials, the criminal law certification committee may consider involvement in protracted litigation.
(3) Within the 3 years immediately preceding application, the applicant’s substantial involvement must be sufficient to demonstrate special competence as a criminal trial lawyer. Substantial involvement includes investigation, evaluation, pleading, discovery, taking of testimony, presentation of evidence, and argument of jury or nonjury cases. For good cause shown, the criminal law certification committee may waive 2 of the 3 years of substantial involvement for individuals who have served as judges. In no event may the year immediately preceding application be waived.
(b)Peer Review.
(1) The applicant shall submit the names and addresses of at least 4 lawyers, not associates or partners, as references to attest to the applicant’s substantial involvement and competence in criminal trial practice. Such lawyers shall be substantially involved in criminal trial law and familiar with the applicant’s practice.
(2) The applicant shall submit the names and addresses of at least 2 judges before whom the applicant has appeared on criminal trial matters within the last 2 years, or before whom the applicant has tried a criminal trial to jury verdict, to attest to the applicant’s substantial involvement and competence in criminal trial practice.
(3)The criminal law certification committee may, at its option, send reference forms to other attorneys and judges.
(c) Education.
(1) The applicant shall make a satisfactory showing that within the 3) years immediately preceding application, the applicant has accumulated at least 45 hours of approved continuing legal education in the field of criminal law.
(2) Applicants seeking certification as both, criminal trial and criminal appellate lawyers must, during the 3 years immediately preceding application, complete 45 hours of approved continuing legal education as aforesaid for each category, for a total of 90 hours.
(d) Examination. Every applicant must pass an examination designed to demonstrate sufficient knowledge, proficiency, and experience in criminal law, application of constitutional principles, and rules of criminal procedure to justify the representation of special competence to the legal profession and the public.
6-13. STANDARDS FOR CERTIFICATION OF A BOARD CERTIFIED APPELLATE LAWYER
RULE 6-13.1 GENERALLY
A lawyer who is a member in good standing of The Florida Bar and who meets the standards prescribed below may be issued an appropriate certificate identifying the lawyer as a “Board Certified Appellate Lawyer.” The purpose of the standards is to identify those lawyers who engage in appellate practice and have the special knowledge, skills, and proficiency to be properly identified to the public as certified appellated lawyers.
RULE 6-13.2 DEFINITIONS
(a) Appellate Practice. “Appellate practice” is the practice of law dealing with the recognition and preservation of error committed by lower tribunals, and the presentation of argument concerning the presence or absence of such error to state or federal appellate courts through brief writing, writ and motion practice, and oral ar *1060 gument. Appellate practice includes evaluation and consultation regarding potential appellate issues or remedies in connection with proceedings in the lower tribunal prior to the initiation of the appellate process.
(b) Practice of Law. The “practice of law” for this area is defined in rule 6-3.5(c)(1).
RULE 6-13.3 MINIMUM STANDARDS
(a) Substantial Involvement. To become certified as an appellate lawyer, an applicant must demonstrate substantial involvement in appellate practice. Substantial involvement shall include:
(1) At least 5 years of the actual practice of law, at least 30 percent of which has been spent by the applicant in substantial and direct participation in appellate practice. At least 3 years of this practice shall be immediately preceding application or, during up to 2 of those 3 years, the applicant may have served as an appellate judge or as one of those attorneys for an appellate court described in subdivision (4) below. The 5 years of appellate practice shall include brief writing, motion practice, oral arguments, and extraordinary writs sufficient to demonstrate special competence as an appellate lawyer.
(2) Having sole or primary responsibility in at least 25 appellate actions for the filing of principal briefs in appeals, or the filing of petitions or responses thereto in extraordinary writ cases.
(3) Having sole or primary responsibility in at least 5 appellate oral arguments. For good cause shown, the appellate practice certification committee may waive this requirement in particular instances.
(4) Within 3 years immediately preceding application, the applicant’s substantial involvement must be sufficient to demonstrate special competence as an appellate lawyer. Substantial involvement includes brief writing, oral arguments, and extraordinary writs. For good cause shown, the appellate practice certification committee may waive up to 2 of the 3 years' substantial involvement for individuals who have served as appellate judges or as clerk of an appellate court, career attorney or staff attorney in excess of 3 years for an appellate court. In no event may substantial involvement during the years preceding application be waived.
(b) Peer Review.
(1) The applicant shall submit the names and addresses of at least 4 lawyers, not associates or partners, as references to attest to the applicant's substantial involvement and competence in appellate practice. Such lawyers shall be involved in appellate practice and familiar with the applicant’s practice.
(2) The applicant shall submit the names and addresses of at least 2 judges before whom the applicant has appeared on appellate matters within the last 2 years to attest to the applicant's substantial involvement and competence in appellate practice.
(3) The appellate practice certification committee may, at its option, send reference forms to other attorneys and judges.
(c) Education. The applicant shall make satisfactory showing that within the 3 years immediately preceding application the applicant has accumulated the following number of approved continuing legal education hours in the field of appellate practice:
(1) at least 30 hours for those applicants who apply during 1993;
(2) at least 35 hours for those applicants who apply during 1994;
(3) at least 40 hours for those applicants who apply during 1995;
(4) at least 45 hours for those applicants who apply during 1996 and thereafter.
■ (d) Examination. Every applicant must pass an examination designed to demonstrate sufficient knowledge, proficiency and experience in appellate practice — including the recognition, preservation, and presentation of trial error, and knowledge and application of the rules of appellate procedure applicable to state and federal appellate practice in Florida — to justify the representation of special competence to the legal profession and public.
*1061 6-13.4 RECERTIFICATION
Recertification shall be pursuant to the following standards:
(a) Substantial Involvement. The applicant shall demonstrate continuous and substantial involvement in the practice of law, of which at least 30 percent must have been spent in actual participation in appellate practice throughout the period since the last date of certification. The demonstration of substantial involvement shall be made in accordance with the standards set forth in Rule 6-13.3(a)(3).
(b) Appellate Action Requirement. The applicant shall have had sole or primary responsibility in at least 15 appellate actions during the period since the last date of certification.
(c) Continuing Legal Education Requirement. The applicant shall show accumulation of at least 50 hours of approved continuing legal education during the period since original certification.
(d) References Required From Lawyers. The applicant shall submit the names and addresses of at least 4 lawyers, not associates or partners, as references to attest to the applicant’s substantial involvement and competence in appellate practice. Such lawyers shall be involved in appellate practice and familiar with the applicant’s practice.
(e) References Required From Judges. The applicant shall submit the names and addresses of at least 2 .judges before whom the applicant has appeared on appellate matters within the last 2 years to attest to the applicant’s substantial involvement and competence in appellate practice.
(f) Additional References. The appellate practice certification committee may, at its option, send reference forms to other attorneys and judges.
CHAPTER 8. LAWYER REFERRAL RULE
8-2. REQUIREMENTS
RULE 8-2.2 CONTENTS OF APPLICATION
An application by a local bar association to the board of governors of The Florida Bar for authority to operate a lawyer referral service shall be in writing and shall be filed with the executive director. Such application shall contain the following:
(a) Statement of Benefits. A statement of the benefits to the public to be achieved by the implementation of the lawyer referral service.
(b) Proof of Nonprofit Status. Proof that the referral service is established and operated by a nonprofit organization exempt from federal taxation under section 501(c)(3), 501(c)(4), or 501(c)(6) of the Internal Revenue Code of 1986.
(c) Submission and Content of Bylaws. The proposed bylaws or rules and regulations that will govern the lawyer referral service. The proposed bylaws shall include the following regulations:
(1) All members of the proposed referral service shall provide proof of professional liability insurance in the minimum amount of $100,000 unless the proposed lawyer referral service itself carries professional liability insurance in an amount not less than $100,000 per claim or occurrence.
(2) The proposed lawyer referral service shall accept membership applications only from attorneys who maintain an office in the geographic area served by the proposed lawyer referral service.
(3) The proposed lawyer--referral-ser-viee shall require-a-waiver of confidentiality for each member limited -toy-and for the sole purpose- of, enabling The-Florida-Bar to inform the-serv-iee of the lawyer’s grievance history and the -status of each complaint against-the lawyer in which there has been a finding of probable cause.
(43) The proposed lawyer referral service shall agree to maintain an alphabetical member list, updated quarterly, with The Florida Bar. In turn, The Florida Bar shall notify the service of any unresolved finding of probable cause against a member. When probable cause has been found at the local grievance committee level, and the lawyer referral service has been notified, such service shall be required to hold refer *1062 ral to the member in question until the matter is resolved. If the member is in good standing with The Florida Bar after the resolution of the matter, then the member may be returned to the service.
(d) Estimated Number of Panel Members. The estimated number of lawyers who will participate in the service.
(e) Number of Local Lawyers. The number of lawyers in the area.
(f) Statement of Need. A statement of the condition that evidences a need for such service in the area.
(g) Geographic Operational Area. The geographic area in which the proposed referral service will operate.
(h) Statement of Operation. A statement of how the lawyer referral service will be conducted.
(i) Statement of Fees. A statement of fees to be charged by the lawyer referral service, including, but not limited to, fees charged by the referral service to members of the public using such service and fees charged by the referral service or remitted to the referral service by member attorneys.
(j) Statement of No Discrimination. A statement that such lawyer referral service will be open for referral to the members of the public without regard to race, sex, national origin, or economic status.
(k) Statement of No Discrimination in Local Bar Membership. A statement that the local bar association is representative of the profession in the area of the service and is open to all members of the profession on an equal basis.
8-3. SUPERVISION
RULE 8-3.1 SUPERVISION AND REPORTING REQUIREMENTS
Any lawyer referral service approved by The Florida Bar and operated by a local bar association shall submit 3 quarterly reports and an annual report to The Florida Bar. The reports shall contain:
(a)a statement of the sources of income by category and amount;
(b) a statement of expenditures by category and amount;
(c) the number of attorneys who were members of the lawyer referral service for the reporting period and special panels, if any;
(d) the number of inquiries received by the referral service from members of the public during the reporting period;
(e) the number of referrals for legal services made by the service during the reporting period;
(f) the number of referrals for nonlegal services made by the service during the reporting period;
(g) a statement of the operation of the lawyer referral service, including the number of personnel employed and the means by which referrals are made by the service; and
(h) a statement of changes, if any, to the bylaws and regulations governing the lawyer referral service.
The annual report shall also contain a proposed budget for the next year and a statement of any material changes in the operation of the lawyer referral service since the filing of the initial application under rule 8-2.2 above.
The Florida Bar shall actively supervise the operation and conduct of all lawyer referral services established under this chapter and may require such other information as it deems necessary to determine the benefits of such service to the public and the achievement of the policies stated herein. The Florida Bar shall not make any charge to the local bar association or its lawyer referral service for such supervision.